UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
NEW YORK YOUTH CLUB, MIGUEL B. AND
KEBONTE C.,

                              Plaintiffs,

                - against -                                    12-CV-7534 (CS)

TOWN OF HARRISON, VILLAGE OF HARRISON, RON       **OPINION AND ORDER**
BELMONT, as Supervisor of the Town of Harrison and
Mayor of the Village of Harrison, FRED SCILIANO, STEVE
MALFITANO, MARLANE AMELIO and JOSEPH
CANNELLA, as Members of the Town Board of the Town of
Harrison, and OFFICE OF THE TOWN CLERK OF THE
TOWN OF HARRISON,

                              Defendants.
-------------------------------------------------------------------------

Appearances:

James O. Druker
Paula S. Frome
Kase & Druker, Esqs.
Garden City, New York
*Counsel for Plaintiffs*

Frances D. Marinelli
Joseph A. Maria, P.C.
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court are the Motion for Summary Judgment of Plaintiffs New York Youth

Club ("NYYC"), Miguel B. and Kelvonte C. (collectively "Plaintiffs"), (Doc. 30), and the Cross-

Motion for Summary Judgment of Defendants Town of Harrison, Village of Harrison (together,

"the Town"), Supervisor of the Town of Harrison and Mayor of the Village of Harrison Ron

Belmont, Members of the Town Board of the Town of Harrison Fred Sciliano, Steve Malfitano,

Marlane Amelio and Joseph Cannella, and the Office of the Town Clerk of the Town of Harrison (collectively "Defendants"), (Doc. 26).  For the following reasons both motions are GRANTED IN PART and DENIED IN PART, in that the claims against the office of the Town Clerk and the individual Defendants other than Belmont are dismissed, and the statute at issue is unconstitutional.

I. **Background**

The following facts, which are based on the parties' Local Rule 56.1 statements and supporting materials, are undisputed unless noted.[1]  Plaintiffs allege that the Town's adoption of an ordinance requiring individuals who wish to engage in door-to-door solicitation to submit to, and pay for, fingerprinting as a condition of obtaining a solicitation permit violates the First Amendment of the United States Constitution.  (Ps' Mem. 1.)[2]  Defendants argue that the fingerprinting requirement does not violate the First Amendment, that the individually named Plaintiffs lack standing to sue, and that certain Defendants are entitled to legislative immunity or are otherwise improperly named.  (*See* Ds' Mem. 1.)[3]  Both sides move for summary judgment.

---

[1] Defendants failed to comply with Section 2.C.i of my Individual Practices, which requires the opposing party to "reproduce each entry in the moving party's Rule 56.1 Statement, and set out the opposing party's response directly beneath it."  Rather than reproducing each entry with its corresponding response, Defendants reproduced all entries together and then all responses together, defeating the purpose of the rule.  And this failure occurred after my chambers had to prompt both parties to re-file their Rule 56.1 oppositions in compliance with my rules.  Defendants also interposed argumentative, if not frivolous, responses.  For example, Defendants objected to ¶ 14 – "Violation of the Ordinance . . . carries a fine and/or imprisonment" – on the grounds "that it is incomplete and a misrepresentation of the facts," and then quoted the statute ("A violation of this chapter is subject to a fine of not less than $500 and/or imprisonment for not more than 15 days, or both . . ."), which (contrary to Defendants' position) shows the accuracy of ¶ 14, and added unnecessary, irrelevant and argumentative matters.  (Doc. 54 at 7.)  Plaintiffs did not do much better, dismissing as "argument and opinion and . . . not a statement of undisputed fact" several statements that plainly are factual and are not argument or opinion (*e.g.*, ¶ 15 regarding the content of a citizen complaint, and ¶ 19 regarding a spreadsheet prepared by the Town Attorney).  (Doc. 53 at 6, 8.)

[2] "Ps' Mem." refers to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 36.)

[3] "Ds' Mem." refers to Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  (Doc. 29.)

(a) *New York Youth Club*

Plaintiff NYYC is a nonprofit 501(c)(3) organization that recruits "at-risk" teens from "very challenging environments" to become members. (Ps' 56.1 Response ¶¶ 24-25; Marinelli Aff. Ex. M, at 7-8, 30.)[4] At any given time the NYYC has approximately 50 members, who are typically between the ages of 13 and 18. (Marinelli Aff. Ex. M, at 9-10, 29.) NYYC's mission is to "rescue kids before they become victims of crimes or their environment." (*Id.* 31.) In furtherance of their mission, NYYC enlists its members to go door-to-door to various residences throughout the New York metropolitan area, including in the Town of Harrison, (*id.* 15-16, 27), to explain the organization's mission and sell items such as candy, cookies, candles and dog treats to financially support the organization. (*Id.* 40; Ex. K, at 42.) Members can earn two dollars and a number of "credits" for each sale. (Ps' 56.1 Response ¶ 31; Marinelli Aff. Ex. K, at 85-88; Ex. L, at 57-58; Ex. N, at 20.) After accumulating enough credits, members are given opportunities to participate in recreational activities such as paintball, basketball games and trips to museums or the movies, funded by the money raised by the members' door-to-door sales. (Marinelli Aff. Ex. M, at 49; Ex. N, at 19-20.) Members travel to various neighborhoods in "crews," each consisting of about eight to twelve members, led by a crew manager. (Marinelli Aff. Ex. M, at 61.) The crew that solicits in the Defendant Town usually consists of approximately twelve members, (*id.* 61), and has included Plaintiffs Miguel B., age 20, and Kelvonte C.,[5] age 18, (*id.* 33-35; Ps' 56.1 Response ¶ 32). Prior to the passage of the challenged

---

[4] "Ps' 56.1 Response" refers to Plaintiffs' Response to Defendants' Rule 56.1 Statement in Opposition to Motion and in Support of Cross-Motion. (Doc. 53.) "Marinelli Aff." refers to Affidavit of Support by Frances Dapice Marinelli. (Doc. 27.)

[5] The case caption spells the Plaintiff's name, "Kebonte," but it appears, from various documents in the record, that Plaintiff's name is spelled "Kelvonte."

ordinance, Plaintiffs and other non-plaintiff NYYC members would solicit in the Town approximately every eight to twelve weeks. (Marinelli Aff. Ex. K, at 41-42.)

(b) *Chapter 183*

In 1934, the Town passed an ordinance, codified as Chapter 183 of the Town's Code, regulating door-to-door solicitation by establishing a permitting scheme for individuals wishing to solicit or peddle. (Ps' 56.1 Response ¶ 1.)[6] In 2013, Chapter 183 was amended, in relevant part, to include the following provisions (the "Amendments"):

**§ 183-4. Application requirements.**

. . .

B. All applicants for a permit pursuant to Chapter 183 . . . shall submit to fingerprinting and shall be subject to a review of their criminal history record by the Chief of Police of the Town . . . . All fingerprints and any applicable fees must be submitted in the form and manner as prescribed by [the New York State] Division of Criminal Justice Services ("DCJS"). Any decision regarding a prospective applicant's fitness for a permit based upon a conviction contained in the criminal history background information obtained from the DCJS must be made upon consideration of New York State Correction Law §§ 701 through 703-b and §§ 751 through 753.

C. A person whose criminal history record background check reveals a conviction for any criminal offense . . . shall be disqualified from receiving a permit to solicit or peddle within the Town. The Harrison Chief of Police will make the determination of the applicant's fitness to receive the applied for permit.

**§ 183-5. Permit required; exemptions; restrictions.**

A. It shall be unlawful for any person to engage in the act of peddling or soliciting in this Town without first obtaining a valid permit therefor.

---

[6] Chapter 183-2 defines "Peddling" as "[t]he vending or the hawking, or offering for sale . . . in any public street or place, or . . . from house to house . . . of any goods, wares, merchandise, provisions, groceries . . . ." (Marinelli Aff. Ex. E, at 183:3.) Chapter 183-2 defines "soliciting" as "[t]he soliciting upon private residential property . . . for the purpose of vending, peddling or soliciting purchase orders for any merchandise . . . or for a subscription or contribution to any church, charitable or public institution . . . ." (*Id.* 183:3-4.)

4

**§ 183-9.  Permit fees.**

. . .

C.  All applicants are required to pay all fingerprinting and processing fees as prescribed by the Division of Criminal Justice Services of New York State.

(*See* Ps' 56.1 Response ¶ 7; Marinelli Aff. Ex. E.)

The cost of fingerprinting and the concomitant criminal history check is approximately $87.00.  (Ps' 56.1 Response ¶ 22.)  Permits granted under Chapter 183 expire after one year, at which point, if the individual wishes to continue to solicit or peddle in the Town, the permit must be renewed, and the cost of the fingerprint check paid again.  (*See* Marinelli Aff. Ex. E, at 183:9.)  Chapter 183 was also amended to add a "Do Not Knock Registry," which allows a property owner to designate his or her address as prohibited for soliciting and peddling purposes.  (*See id.* 183:11; Ps' 56.1 Response ¶ 6.)

Chapter 183, as it stands today, was enacted with the stated purpose of

afford[ing] a just protection from peddlers and solicitors to merchants who maintain local business establishments . . . by regulating door-to-door solicitation by licensed sales agents; establishing a Do Not Knock Registry; and promulgating reasonable time and manner restrictions on door-to-door solicitation, including enforcement of the Do Not Knock Registry, and by providing additional revenues and to protect the citizens of the Town against crime and by preserving the private property, peace and comfort of the occupants of private residences in the town.

(Marinelli Aff. Ex. E, at 183:2.)

The impetus for the challenged Amendments apparently came about sometime prior to August 2011, when then-Town Clerk Joseph Acocella presented the Town Attorney's office with preliminary research on other, out-of-state, municipalities that had enacted no-knock registries.  (Ps' 56.1 Response ¶ 5; Marinelli Aff. Ex. J, at 11-12.)  Subsequently, proposed changes to the law, including the fingerprinting requirement and no-knock registry, were put into draft form, and ultimately approved by the Town Board after a public hearing held on June 21, 2012.  (Ps'

5

56.1 Response ¶¶ 7-8.)  At the hearing, discussion regarding changes to Chapter 183 took place exclusively among Town officials who, for the most part, expressed concerns regarding the mechanics of criminal background checks, and where and when soliciting or peddling would be permitted.  (Marinelli Aff. Ex. R.)  Defendant Councilman Cannella explained that "what we really tried to do [with the ordinance] was to restrict this as much as possible . . . for people who really don't want to be disturbed, [the answer] is to sign up for the No Knock Registry . . . .  For those willing to have people knock on their door the police department will be running criminal checks and we will protect you to the extent we can."  (*Id.*)

Additionally, Mayor Belmont discussed proposed amendments to Chapter 183 with a Town Attorney responsible for drafting legislation after it became apparent during his 2011 mayoral campaign that "people were concerned about peddlers and people knocking on their doors."  (Marinelli Aff. Ex. I, at 5, 10, 12-14.)  Mayor Belmont understood the concern to be that citizens "didn't feel that people should be able to knock on their door at any time and solicit," but people did not have specific objections to the types or classes of people knocking on their doors, (*id.* 11), or express concerns that door-to-door solicitors had criminal backgrounds, (*id.* 14, 21).  Mayor Belmont never had a discussion with anyone from the Town public safety office or Town police department regarding solicitors or peddlers.  (*Id.* 21.)

Since the enactment of Chapter 183's fingerprinting requirement in 2012, neither the individually named Plaintiffs nor other non-plaintiff NYYC members have solicited in the Town, allegedly due to the prohibitively high cost of the requisite fingerprinting.  (Jackson Aff. ¶¶ 18-21, 29.)[7]  Moreover, Nathan Jackson, NYYC's director and sole employee, (P's 56.1 Response ¶ 24; Marinelli Aff. Ex. M, at 7-8), testified that he believes the fingerprinting requirement

---

[7] "Jackson Aff." refers to the Affidavit in Support by Nathan Jackson.  (Doc. 35.)

"stigmatizes teens," (Marinelli Aff. Ex. M, at 57), because many NYYC members "feel that the cops are the enemy, that big brothers are always watching," (*id.* 59).

Plaintiffs filed their Complaint in this action on Oct. 9, 2012, and a Second Amended Complaint ("SAC"), (Doc. 19), on October 30, 2013, alleging that Chapter 183's fingerprinting requirement abridges their rights guaranteed under the First Amendment because, among other things, it:  (1) imposes an unconstitutional financial burden, (Ps' Mem. 8); (2) fails to leave open other opportunities to engage in First Amendment-protected activity, (*id.* at 10); (3) invades Plaintiffs' privacy, (*id.* at 11); and (4), in any event, is not reasonably related to an important governmental purpose, (*id.* at 11).  Specifically, Plaintiffs allege that the ordinance has prohibited them from "perform[ing] the fundraising and advocacy in the Town and Village of Harrison that they performed prior to the passage of the Ordinance, because of the threat of the Defendants to enforce it."  (SAC ¶ 53.)  Accordingly, Plaintiffs seek declaratory and injunctive relief with respect to the constitutionality of Chapter 183's fingerprinting provision, money damages and attorneys' fees.  (*Id.* ¶¶ 54, 56-58.)

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant

bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### III. Constitutionality of Chapter 183 of the Town's Code

"[T]he government may impose reasonable restrictions on the time, place, or manner of . . . speech" that is protected under the First Amendment, as long as the restrictions "are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted).[8] With respect to the governmental interest requirement, "the government has the burden of showing that there is evidence supporting its proffered justification for its speech restriction when asserting that the restriction survives the time, place, and manner analysis." *Horina v. City of Granite City, Ill.*, 538 F.3d 624, 633 (7th Cir. 2008) (internal quotation marks omitted). Although the government need not produce a wide array of evidence, it must "proffer *something* showing that the restriction actually serves a government interest." *Id.* at 633–34 (emphasis in original). This "evidence of a connection between 'the speech regulated by the ordinance and the secondary effects that motivated the adoption of the

---

[8] The parties seem to agree that Chapter 183 is a content-neutral time, place and manner restriction subject to the aforementioned standard, which amounts to intermediate scrutiny. (Plaintiffs' Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment and in Reply and Further Support of their Motion for Summary Judgment ("Ps' Mem. in Opp."), 3-4; *see* Defendants' Reply Memorandum of Law ("Ds' Rep."), (Doc. 44), at 9.) *See, e.g.*, *Ohio Citizen Action v. City of Mentor-On-The-Lake*, 272 F. Supp. 2d 671, 679 (N.D. Ohio 2003) ("Regulations which limit the time, place, and manner of speech, and which are not content based, are analyzed under intermediate scrutiny but with an additional requirement that they leave open ample alternative channels for communication of information."). Although the Court has a printed copy of Plaintiffs' Memorandum in Opposition, it appears Plaintiffs failed to electronically file that document, in violation of the Court's Electronic Case Filing Rules and Instructions, Section 1.1. Plaintiffs are directed to file their Memorandum in Opposition immediately.

The parties have not suggested that Plaintiffs' activities in the Town might constitute commercial speech subject to a different constitutional test. This may be due to the fact that Plaintiffs seem to be bringing a facial challenge to the fingerprinting requirement (in that they argue that the problem is the ordinance itself, not how it is being applied to them specifically), and on its face, the ordinance applies to solicitation of both charitable contributions and commercial transactions. The former may be subject to a higher level of constitutional protection than the latter, *see id.*, at 680, but even if this were a challenge to a restriction on purely commercial speech, the fingerprinting requirement would still fail the test set out in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980), for regulations of commercial speech. This is so because, for the same reasons (detailed below) that it fails the *Ward* test, the regulation does not directly advance the substantial state interest said to have justified its enactment.

9

ordinance'" must be considered before enacting the statute.  *White River*, 481 F.3d at 171-72 (quoting *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 441 (2002)).  Courts have struck down time, place, and manner restrictions where the government failed to set forth "objective evidence" demonstrating that the restrictions served the interests asserted.  *Id.* at 634; *see also City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51 (1986) (evidence relied upon by city in enacting ordinance abridging First Amendment rights must be "reasonably believed to be relevant to the problem that the city addresses"); *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 171-72 (2d Cir. 2007) (town relied on insufficient evidence of secondary effects of nude dancing when enacting public indecency ordinance); *Klein v. City of San Clemente*, 584 F.3d 1196, 1201–04 (9th Cir. 2009) (city enacting leafleting ordinance failed to provide any evidence that placing leaflets on cars resulted in litter, much less more-than-minimal amount of litter); *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1221–22 (8th Cir. 1999) (no factual basis existed for concluding cause-and-effect relationship between placement of leaflets on parked cars and litter that impacted health, safety, or aesthetic well-being of City).

Although preventing crime and "preserving the private property [and] peace" of municipal residents, (Marinelli Aff. Ex. E at 183:2), have been found to be significant government interests, *see, e.g.*, *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 163 (2002) (crime prevention is legitimate interest that can justify door-to-door soliciting regulations); *Ward*, 491 U.S. at 796 (municipalities have significant interest in protecting "the well-being, tranquility, and privacy of the home") (internal quotation marks omitted); *Jobe v. City of Catlettsburg*, 409 F.3d 261, 268 (6th Cir. 2005) (individuals' desire to have their private property left alone constituted significant government interest); *N.J. Citizen Action v. Edison Twp.*, 797 F.2d 1250, 1265 (3d Cir. 1986) (deterring crime is an "indisputably

substantial" interest in context of regulating solicitation), here the Town has failed to set forth sufficient documentary or testimonial evidence to show that its interests in crime-prevention and/or the tranquility of private property are actually served by or justify the fingerprinting requirements in Chapter 183. Rather, Defendants have provided generalizations about Town residents' concern with permissible hours of solicitation, (Marinelli Aff. Ex. I, at 10-11; Ex. R); pointed to meeting minutes from a public Town Board hearing that offer no insight as to why fingerprint background checks are necessary, (*id.* Ex. R);[9] provided a copy of the original law showing that Section 183 was part of an anti-solicitation law, (*id.* Ex. E); noted that other municipalities have passed similar no-knock laws and that unspecified research regarding those laws was conducted prior to the enactment of the Amendments, (*see, e.g.*, *id.* Ex. J, at 11, 26, 31-32);[10] and generally argued that because "a lot" of complaints were made about solicitations, criminal background checks with fingerprinting will alleviate that concern, (*see, e.g.*, Ps' 56.1 Response ¶ 10). This evidence supports other aspects of the Amendments but has no connection to the fingerprinting requirement.

Further, Defendants have offered nothing to show that any meaningful or significant research regarding fingerprinting ordinances was conducted prior to the commencement of this suit. Indeed, Defendants fail to identify concerns actually voiced or recognized prior to the

---

[9] Frank Allegretti, a Town Attorney responsible for proposing and drafting legislation, (Marinelli Aff. Ex. J, at 8-9; Ex. I, at 8), testified that while "a lot" of resident complaints regarding door-to-door solicitation were received by the Town police department and Clerk's office, he did not recall a Town Board meeting in which someone "step[ped] up . . . and sa[id], 'I have an issue [with solicitors].'" (*Id.* Ex. J, at 17-18.) Moreover, Allegretti testified that the citizen complaints consisted of complaints about "solicitors throughout the municipality that were soliciting without permits or supervision," (*id.* 21-22), and "being very aggressive with our homeowners," (*id.* 17; Ps' 56.1 Response ¶ 10). He did not report concerns regarding individuals with criminal records or solicitors committing crimes.

[10] While Defendants may have considered the no-knock ordinances of other municipalities prior to the enactment of the Amendments, it appears that the only research regarding ordinances with fingerprint requirements was conducted *after* the initiation of the present lawsuit. (Marinelli Aff. Ex. J, at 30-32.)

11

enactment of the Amendments that would evince a basis for a fingerprinting requirement. In other words, while the fingerprinting requirement would identify solicitors or peddlers with criminal records, in the absence of any objective evidence that the Town ever had a problem or concern with criminals soliciting door-to-door,[11] the fingerprinting requirement is not relevant to the problem the ordinance addresses. In fact, the concerns actually raised – predominantly regarding the permissible daily hours for door-to-door solicitation – were redressed by Chapter 183's Do Not Knock provision.

In sum, the Town has not carried its burden. It has simply not shown either the existence of a significant government interest justifying the provision or how the provision addresses the concerns that actually existed. That is, the Town has not established a factual basis for concluding that it reasonably believed that criminals were engaging in door-to-door solicitation, that a problem with criminal-solicitors ever existed in the past, or that residents possessed a real concern that criminals were engaging in door-to-door solicitation. Although this Court can imagine a fingerprinting requirement like the one in Chapter 183 potentially being justifiable in other circumstances, the Defendants in this case have not shown any connection between a legitimate, significant government interest and the restriction imposed by the fingerprinting requirement that justifies the infringement on speech it causes. In addressing the legitimate

---

[11] Indeed, after a review of the resident complaints received by Town police regarding door-to-door solicitations, it appears the only violation of law associated with solicitation was solicitation without a permit. (*See, e.g.*, Affirmation in Support by James Druker ("Druker Aff."), (Doc. 33), Ex. E, at 2007-000007, 2007-000014, 2007-000021.) That is, in the period leading up to the enactment of the Amendments, when Town police responded to complaints regarding door-to-door solicitors, the only laws actually enforced were laws regulating door-to-door solicitation. (*See* Ds' 56.1 Response ¶ 21.) Moreover, in many of the calls to which Town police responded, background checks were conducted, and police were able to identify whether solicitors had criminal histories or outstanding warrants. (*See, e.g.*, Druker Aff. Ex. E, at 2007-39; Ex. G 2009-6; Ex. H, at 2010-40-41, 2010-55-56.) While Town Attorney Allegretti testified that fingerprinting is "[t]he only accurate way of getting a criminal history background check," (Marinelli Aff. Ex. J, at 44), there is no indication that the Town experienced any problem with solicitors misidentifying themselves, or had any other reason to regard background checks without a fingerprinting component, which were conducted prior to the enactment of the Amendments, as inadequate.

concerns of its citizens, the Town painted with too broad a brush and enacted an ordinance that was not narrowly tailored to serve those interests. Accordingly, I find Chapter 183 unconstitutional to the extent that it requires individuals wishing to solicit or peddle door-to-door to submit to, and pay for, fingerprinting checks. In the absence of genuine disputes of material fact regarding the constitutionality of Chapter 183, Plaintiffs' motion for declaratory and injunctive relief with respect to Chapter 183's fingerprinting requirement is granted, and Defendants' motion to dismiss the complaint in its entirety is denied.[12]

## IV. Defendants as Proper Parties

### A. *Members of the Town Board and Mayor Belmont*

Defendants argue that the complaint should be dismissed as against the individual Members of the Town Board and Mayor Belmont because they are entitled to legislative immunity, (Ds' Mem. 19), and that in any event, to the extent those Defendants are being sued in their official capacities, they are not proper parties as the Town is the real party in interest, (*id*. 20-21).

It is well-established that federal, state, and local legislators are entitled to absolute immunity from civil liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44 (1998). This legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity," *id*. at 54 (internal quotation marks omitted), even if taken by members of an executive branch of government, *id*. at 55. Immunity does not extend to purely ministerial duties, *id.* at 51-52, or to discretionary personnel decisions like hiring and firing of individual employees, *see Harhay v. Town of Ellington Bd. Of Educ*., 323 F.3d 206, 210-11 (2d Cir. 2003). Whether an act is "legislative" turns on the nature of the act, and not on the subjective motive or

---

[12] In light of this disposition it is unnecessary to reach Plaintiffs' other arguments regarding the unconstitutionality of the Amendments.

13

intent of the officer performing it. *Bogan*, 523 U.S. at 54. In the Second Circuit, however, legislative immunity does not apply to local officials sued in their official capacities. *See Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) ("Immunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities.") (emphasis in original); *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999) (holding legislative immunity did not bar claims for injunctive relief in official-capacity suits against local government officials).

Plaintiffs do not squarely address Defendants' legislative immunity argument, but "acknowledge that they cannot seek damages against the individual defendants," and assert that the Mayor and Town Board members are proper defendants because Plaintiffs seek only declaratory and injunctive relief as to them. (*See* Ps' Mem. in Opp., at 11.) It is evident, then, from Plaintiffs' clarification as to the type of relief sought, that they wish to proceed against Defendants in their official capacities only. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). It follows that when a plaintiff prevails in an official-capacity suit, it must look to the municipality as the real party in interest.[13] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Where, as here, Plaintiffs seek relief from both the municipal entity and municipal officials in their official capacities for an injury resulting from a policy of the Town – *i.e.*, the passage of Chapter 183 – the claims against the officials are redundant because "claims against [Town] officers in their official capacities are in reality claims against the Town." *Rini v. Zwirn*, 886 F. Supp. 270, 281 (E.D.N.Y. 1995); *see N.Y. Youth Club v. Town*

---

[13] Plaintiffs acknowledge, with respect to their demand for damages, that "the proper party to answer in damages is the Town." (Ps' Mem. in Opp., at 11.)

*of Smithtown*, 867 F. Supp. 2d. 328, 339 (E.D.N.Y. 2012) (suit against municipality and Town Council members in official capacities redundant). Accordingly, the claims against the Board members are dismissed "not because these parties have immunity but merely because the Town is the real party in interest." *Rini*, 886 F. Supp. at 281.[14]

Notwithstanding the foregoing, government officials may be sued in their official capacities for prospective declaratory or injunctive relief. *See Glass v. Coughlin*, No. 91-CV-193, 1991 WL 102619, at *2 (S.D.N.Y. May 29, 1991). To succeed on such a claim, a plaintiff must show that the named official has a "direct connection to, or responsibility for, the illegal action." *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001). While Plaintiffs' claims for declaratory and injunctive relief as to the Board members fail because, among other things, they have nowhere alleged the Board's connection to or involvement in the enforcement of Chapter 183 (apart from presumably voting to enact the ordinance), those same claims survive against Defendant Belmont, as Mayor and Supervisor of the Town.[15] *See Smithtown*, 867 F. Supp. 2d at 339 (Town Supervisor involved in enforcement of town ordinances, and therefore properly named as defendant in suit seeking prospective declaratory and injunctive relief with respect to solicitation ordinance). Accordingly, Defendants' motion as to Belmont is denied.

### B. Office of the Town Clerk

Defendants also argue, correctly, that the Office of the Town Clerk cannot be sued because it is an administrative arm of a municipality and, under New York law, does not have a legal identity separate and apart from the municipality. *See Robischung-Walsh v. Nassau Cty.*

---

[14] If Plaintiffs were seeking relief from these Defendants in their individual capacities, I would indeed find that they are entitled to absolute immunity for enacting Chapter 183.

[15] In addition to being a voting member of the Town Board, (Marinelli Aff. Ex. I, at 9), Belmont is "responsible for the citizens, as well as the employees of the entire [T]own," (*id.* at 8).

*Police Dep't*, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010); *see also Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 454 n.1 (S.D.N.Y. 2011) ("[W]here both the municipality and the municipal agency have been named as defendants, courts have dismissed the claims against the agency.") (collecting cases). Accordingly, the claims against the Town Clerk are dismissed.

## V. Plaintiffs' Standing

Defendants argue that Plaintiffs Miguel B. and Kelvonte C. fail to establish that they have standing because: (1) both fail to identify a particularized injury; (2) neither is a minor nor an "at-risk" youth; and (3) both "had no knowledge of this action" and "had never read the Complaint." (Ds' Mem. 23.)

Article III, Section 2 of the U.S. Constitution restricts federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381 (2d Cir. 2000). "Constitutional standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (internal quotation marks omitted). To establish standing within the meaning of Article III,

> first, the plaintiffs "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Moreover, the "party invoking federal jurisdiction bears the burden of establishing these elements."

*Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 175 (2d Cir. 2006) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendants' sole challenge with respect to constitutional standing is that the individual Plaintiffs "do not claim any particularized, actual or imminent injury to themselves." (Ds' Mem. 23.) It is well-established that impairment of rights guaranteed by the Constitution is an injury sufficient to confer standing. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982). The injury-in-fact requirement is met in the First Amendment context if "a plaintiff has suffered threatened or actual injury that results from a defendant's alleged illegal act." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "That the plaintiffs have not violated a statute and incurred its penalties does not deprive them of standing." *Authors League of Am., Inc. v. Ass'n of Am. Publishers*, 619 F. Supp. 798, 805 (S.D.N.Y. 1985); *see also Laird v. Tatum*, 408 U.S. 1, 14 (1972) (claim of "specific present objective harm" or "threat of specific future harm" raises cognizable injury in First Amendment context). Thus, an individual's decision not to exercise a constitutional right to avoid violating a statute suffices to meet Article III's injury-in-fact requirement. *See Authors League of Am.*, 619 F. Supp. at 805; *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304, 2015 WL 5729783, *10 (S.D.N.Y. Sept. 29, 2015) ("[I]n the First Amendment context a plaintiff need only demonstrate a substantial risk that application of the provision will lead to the suppression of First Amendment rights.") (internal quotation marks omitted).

The Town in fact enforces Chapter 183 against individuals who solicit door-to-door without permits. (*See* Marinelli Aff. Ex. H.) Plaintiffs Kelvonte and Miguel, and non-plaintiff NYYC members, solicited door-to-door in the Town every eight to twelve weeks prior to the passage of Chapter 183's fingerprinting requirement. (Marinelli Aff. Ex. K, at 41-42; Ex. L, at 32; Ex. N, at 22-23.) Since the enactment of the fingerprinting requirement, however, no NYYC

members, including the individual Plaintiffs, have solicited in the Town. (Jackson Aff. in Support, ¶ 29.) "A litigant who suffers an ongoing injury resulting from [a] statute's chilling effect on his desire to exercise his First Amendment rights does have standing to sue." *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005) (internal quotation marks omitted) (holding plaintiffs demonstrated injury-in-fact where failure to submit to fingerprinting and refusal to pay fee would necessarily lead to denial of door-to-door soliciting license). If Plaintiffs Kelvonte and Miguel were to attempt to solicit, once again, in the Town, they would be subject to the effects and harms of Chapter 183's constitutionally infirm fingerprinting provision. The ordinance, in effect, forces them to choose between foregoing door-to-door solicitation in the Town altogether, in violation of their First Amendment rights, or soliciting in the Town in violation of the law. Plaintiffs' decision to stop engaging in protected speech in the Town constitutes harm sufficient to satisfy Article III's injury-in-fact requirement.[16]

The remainder of Defendants' arguments are similarly unavailing. First, Defendants fail to cite authority or otherwise explain why Miguel or Kelvonte need to be minors or "at-risk" youths to have standing. As discussed above, as individuals who solicit door-to-door in the Town, both Plaintiffs are similarly subject to, and harmed by, the challenged requirements of Chapter 183.

Second, Defendants argue that the individual Plaintiffs lack standing because they "had no knowledge of this action, [and] had never read the Complaint . . . ." (Ds' Mem. 23; Ps' 56.1

---

[16] Defendants further argue that NYYC lacks standing "since the teen members of the [NYYC] do not have standing." (Ds' Rep. at 15.) An organization may sue on behalf of its members, if "[(1)] its members would have standing to sue in their own right, [(2)] the interests at stake are germane to the organization's purpose, and [(3)] neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Because, as discussed above, the named members of NYYC do have standing, and door-to-door fundraising is germane to NYYC's purpose, and neither the claim asserted nor relief requested requires individual members' participation in the suit, NYYC, too, has proper Article III standing.

18

Response ¶ 42.)  While the Court finds this fact disturbing, Defendants again fail to cite authority or otherwise explain why this deprives Plaintiffs of standing.

Nevertheless, this argument raises questions regarding Plaintiffs' counsel's professional and ethical obligations to both the Court and their clients.  If, as Miguel and Kelvonte testified, and as their reply affidavits seem to confirm, counsel filed the complaint without consulting them, then it is entirely unclear how counsel could have met their obligations under Federal Rule of Civil Procedure 11(b) or New York Rule of Professional Conduct 1.4.  Plaintiffs' counsel are directed to write the Court, within 14 days of the date of this Order, to explain the circumstances of counsel's filing this lawsuit on behalf of Miguel and Kelvonte, including the degree of consultation with them.

## VI. Conclusion

For the foregoing reasons, Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART, in that the claims against the individual Defendants, other than Belmont, and the Office of the Town Clerk are dismissed, and otherwise DENIED, and Plaintiffs' Motion for Summary Judgment is GRANTED as to the remaining Defendants in that the statute at issue is unconstitutional, and DENIED as to the dismissed Defendants.  The Clerk of Court is respectfully directed to terminate the pending motions.  (Docs. 26, 30.)  The parties are directed to confer and submit, no later than **December 22, 2015**, a proposed Order enjoining the enforcement of § 183-4(B) of the Town of Harrison Code.  The parties are further directed to appear before this Court on **January 21, 2016 at 2:00 p.m.** to discuss the determination of the damages and attorneys' fees to which Plaintiffs may be entitled.

**SO ORDERED.**

Dated: December 10, 2015
      White Plains, New York

                                                _____
                                                CATHY SEIBEL, U.S.D.J.