UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------
NEW YORK YOUTH CLUB, MIGUEL B. AND
KEBONTE C.,

         Plaintiffs,

    - against -            12-CV-7534 (CS)

TOWN OF HARRISON, VILLAGE OF HARRISON, RON  **OPINION AND ORDER**
BELMONT, as Supervisor of the Town of Harrison and
Mayor of the Village of Harrison, FRED SCILIANO, STEVE
MALFITANO, MARLANE AMELIO and JOSEPH
CANNELLA, as Members of the Town Board of the Town of
Harrison, and OFFICE OF THE TOWN CLERK OF THE
TOWN OF HARRISON,

         Defendants.
-------------------------------------------------------------------------

<u>Appearances</u>:

James O. Druker
Paula S. Frome
Kase & Druker, Esqs.
Garden City, New York
*Counsel for Plaintiffs*

Steven J. Harfenist
Harfenist Kraut & Perlstein LLP
Purchase, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

   Before the Court is an application for damages, attorneys' fees and costs, (Doc. 78), by

Plaintiffs New York Youth Club ("NYYC"), Miguel B. and Kelvonte C. (collectively

"Plaintiffs"), in connection with the above-captioned matter.  Plaintiffs request $62,856 in

damages, $77,925 in attorneys' fees and $1,222.95 in costs.  For the reasons set forth below, I

find that Miguel B. and Kelvonte C. are entitled to compensatory damages in the amount of $100

each, NYYC is entitled to nominal damages in the amount of $1, and Plaintiffs' counsel, the law firm of Kase & Druker, Esqs., is entitled to fees and costs in the amount of $42,125.45.

## I.    <u>BACKGROUND</u>

On October 30, 2013, Plaintiffs filed a second amended complaint against Defendants alleging that an ordinance regulating door-to-door solicitation, codified as Chapter 183 of the Town's Code, prohibited Plaintiffs from conducting fundraising (via candy and other sales) and advocacy activities and thereby abridged their First Amendment rights.  (*See* Second Amended Complaint ("SAC"), (Doc. 19), ¶¶ 42-44.)  Plaintiffs sought declaratory and injunctive relief with respect to the constitutionality of Chapter 183's fingerprinting provision, money damages and attorneys' fees.  Throughout the litigation, Plaintiffs were represented by James O. Druker and Paula Schwartz Frome, both of the law firm Kase & Druker, Esqs.[1]

On December 10, 2015, I granted in part and denied in part both parties' motions for summary judgment, (Doc. 55), in that the claims against the office of the Town Clerk and the individual Defendants other than Ron Belmont were dismissed, and the statute at issue was found unconstitutional.  Plaintiffs' counsel thereafter filed an application for damages and attorneys' fees in connection with the case.  (Doc. 78.)  Defendants oppose, arguing that (1) Plaintiffs have failed to prove they have suffered any damages and should instead be awarded nominal damages, and (2) Plaintiffs' counsel's requested hourly rates are too high, timesheet

---

[1] Scott M. Druker of the same firm also contributed in a limited capacity.  (*See* Affidavit of Paula Schwartz Frome in Support of Plaintiffs' Application for Attorneys' Fees and Damages ("Frome Aff."), (Doc. 79), ¶ 26.)  James O. Druker is not seeking compensation for his time spent on this matter, which apparently consisted of editing Ms. Frome's work.  (*See* Frome Aff. ¶ 15; *see* Reply Affidavit of Paula Schwartz Frome in Support of Plaintiffs' Application for Attorneys' Fees and Damages ("Frome Reply Aff."), (Doc. 85), ¶ 15.)

entries are not contemporaneous, and time summaries are too vague and excessive for the tasks performed.  (*See* Ds' Mem. 1-2, 14.)[2]

## II.   LEGAL STANDARD

### A.   Attorneys' Fees

Pursuant to 42 U.S.C. § 1988(b), a court may, in its discretion, award reasonable attorneys' fees to the prevailing party in any action or proceeding to enforce a provision of § 1983.  "[P]laintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted).

Once it is determined that a party is entitled to fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  *Id.*  In calculating a "presumptively reasonable fee," the district court must "determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked."  *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497, 2008 WL 4525372, at *5 (S.D.N.Y. Oct. 2, 2008) (internal quotation marks and citations omitted).  In so doing, a court should consider all of the "case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate," including the so-called *Johnson* factors,[3] while also "bear[ing]

---

[2] "Ds' Mem." refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Request for Damages and Plaintiff's Counsel's Request for Attorneys' Fees Pursuant to 42 U.S.C. 1988.  (Doc. 88.)

[3] The *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the

in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  The hourly rate employed should be "based on market rates in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  It is well-established that the prevailing community a district court should consider . . . is normally the district in which the court sits." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (internal quotation marks and citation omitted).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley*, 461 U.S. at 433, and "the most critical factor in a district court's determination of what constitutes reasonable attorneys' fees . . . is the degree of success obtained by the plaintiff," *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (internal quotation marks omitted).  The court may use its discretion, based on its experience in general and with the particular case at issue, to "trim[ the] fat from a fee application." *Kirsch v. Fleet St., Ltd*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks and citation omitted).  A court should decrease the number of hours included in the fee calculation if the claimed time is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  "If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board

---

attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2007) (internal quotation marks omitted).

percentage reduction in compensable hours." *M. Lady, LLC v. AJI, Inc.*, No. 06-CV-194, 2009 WL 1150279, at *8 (S.D.N.Y. Apr. 29, 2009) (internal quotation marks and citation omitted).

### B. Damages

Damages in a § 1983 case "are generally determined according to principles derived from the common law of torts." *Wallace v. Suffolk Cty. Police Dep't*, 809 F. Supp. 2d 73, 81 (E.D.N.Y. 2011) (internal quotation marks omitted). The Second Circuit has held that "[t]he denial of a particular opportunity to express one's view can give rise to a compensable injury," *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 649 (2d Cir. 1998), although "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages," *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986). Accordingly, compensatory damages for violations of First Amendment rights are impermissible absent proof of actual injury. *See id.* at 308; *Knoeffler v. Town of Mamakating*, 87 F. Supp. 2d 322, 333 (S.D.N.Y. 2000) (plaintiff who could prove he sustained significant actual injuries as a result of defendant's enforcement of ordinances could seek damages pursuant to § 1983). "In New York, the damages recoverable in tort actions cannot be contingent, uncertain, or speculative; but if the fact is established that the plaintiff has sustained an actionable injury as the direct result of the defendant's wrongful act, [only] reasonable certainty as to the amount of that injury . . . is required." *Wallace*, 809 F. Supp. 2d at 81 (alteration and internal quotation marks omitted). "[W]here the evidence shows that plaintiff's injuries were clearly caused by the violation, it is error to fail to award compensatory damages," *Colon v. City of N.Y.*, No. 09-CV-8, 2012 WL 691544, at *10 (E.D.N.Y. Feb. 9, 2012), *report and recommendation adopted*, 2012 WL 686878 (E.D.N.Y. Mar. 2, 2012), and therefore, when a party seeks compensation for an injury that likely occurred but is difficult to establish, a court may "roughly approximate the

harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure," *Stachura*, 477 U.S. at 311.

Where a plaintiff cannot show proof of actual injury, "[d]eprivations of civil rights may lead to damages for a nominal sum of money." *United Yellow Cab Drivers Ass'n, Inc. v. Safir*, No. 98-CV-3670, 2002 WL 461595, at *10 (S.D.N.Y. Mar. 22, 2002). "Only where . . . the sole injury that [the] plaintiff suffered was the deprivation of his rights without any physical, emotional or financial damages or [where the factfinder] is unable to compute the monetary damages except by engaging in pure speculation and guessing" should nominal damages be awarded. *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 574 (E.D.N.Y. 2013) (internal quotation marks omitted). The burden to prove entitlement to damages rests with the plaintiff. *See Safir*, 2002 WL 461595, at *11.

## III.   DISCUSSION

### A.   Presumptively Reasonable Fee Analysis

Plaintiffs' posture as the prevailing party is not in dispute, and therefore the Court will, as is customary, award Plaintiffs reasonable attorneys' fees under the applicable fee-shifting provision. *See Hensley*, 461 U.S. at 429 (prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust") (internal quotation marks omitted). In doing so I have considered the *Johnson* factors, to the extent applicable, in order to calculate the "presumptively reasonable fee."

#### 1.   Reasonable Hourly Rate

"The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community." *Adams v. N.Y. State Educ. Dep't*, 630 F. Supp. 2d 333,

348 (S.D.N.Y. 2009) (internal quotation marks omitted).  In this case, the relevant community is

the Southern District of New York.  *See Reiter*, 457 F.3d at 232.

Starting first with the "most critical factor," *Barfield*, 537 F.3d at 152 (internal quotation

marks omitted), the Court finds that Plaintiffs achieved success in this matter, as evidenced by

the order enjoining Defendants from enforcing the fingerprinting provision.

The Court turns next to counsel's experience and qualifications.  Ms. Frome requests an

hourly rate of $450, citing her forty-one years as a licensed attorney and her experience in

"numerous civil rights cases," including another action involving a solicitation statute in which

she represented Plaintiff NYYC against the Town of Smithtown.  (Frome Aff. ¶¶ 3, 5, 25.)  Scott

Druker requests an hourly rate of $375, citing his ten years as a licensed attorney and his

handling of three actions alleging violations of § 1983.  (Affidavit of Scott M. Druker in Support

of Plaintiffs' Motion for Attorneys' Fees and Damages ("Druker Aff."), (Doc. 80), ¶¶ 2, 4, 9.)  In

support of their requested hourly rates, Plaintiffs' counsel cites a case from outside the relevant

community, *Favors v. Cuomo*, 39 F. Supp. 3d 276 (E.D.N.Y. 2014), and two other cases from

the Southern District of New York, including *Dancy v. McGinley*, 141 F. Supp. 3d 231

(S.D.N.Y. 2015), which catalogues court-approved attorney rates for experienced civil rights

attorneys ranging from $250 to $600 between 2000 and 2010.  *See Dancy*, 141 F. Supp. 3d at

237 (citing *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 431

(S.D.N.Y. 2012)).

Defendants submit that the rate awarded to Plaintiffs' counsel should not exceed $250 per

hour.  (Ds' Mem. 14.)  In support of their argument, Defendants cite to the Court's decision in

*Harty v. Par Builders, Inc.*, No. 12-CV-2246, 2016 WL 616397, at *3-4 (S.D.N.Y. Feb. 16,

2016), which awarded attorneys with twenty-five and seventeen years of experience fees at the

reasonable hourly rate of $375, and to a 2010 Report and Recommendation by Magistrate Judge Lisa Smith referenced by the Court in *Harty* and adopted by the District Court in that case in its entirety, *Manson v. Friedberg*, No. 08-CV-3890, 2013 WL 2896971, at *11 (S.D.N.Y. June 13, 2013), which similarly awarded experienced civil rights counsel fees at an hourly rate of $375. Defendants further point out that Ms. Frome is not a partner at her firm, which is a small firm that does not specialize in civil rights litigation.  (Ds' Mem. 24.)

The Court looks to rates charged by and awarded to similar practitioners in the Southern District of New York to arrive at a reasonable hourly rate for Plaintiffs' counsel.  After carefully considering the Parties' arguments and the case-specific factors set forth above, the Court finds that Ms. Frome should receive attorneys' fees for this case at the reasonable hourly rate of $375. The factors considered included, among others, Frome's forty-plus years of experience as a licensed attorney; that little of her practice involves trial-court level civil rights work;[4] Plaintiffs' success in this litigation; and the hourly rates received by other attorneys in this district bringing comparable claims with comparable experience and qualifications, *see Harty*, 2016 WL 616397, at *4 (awarding $375 per hour to attorneys with experience of twenty-five and seventeen years litigating civil rights cases); *Manson*, 2013 WL 2896971, at *10-11 (collecting cases awarding $250 to $600 per hour for experienced civil rights attorneys, and awarding $375 per hour); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this District have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450."); *Finch v. N.Y. State Office of Children &*

---

[4] Ms. Frome described her specialty as "motion and appellate practice," and noted that she prepares appeals for "criminal, civil, tax and matrimonial cases."  (Frome Aff. ¶¶ 2, 3.)  Her CV, (*see id.* Ex. A), does not mention civil rights work.  Further, under the rubric of "the level of skill," "the ability of the attorneys," and "the nature and length of the professional relationship with the client," *Arbor Hill*, 522 F.3d at 186 n.3, I take into account that apparently nobody at the firm ever even spoke to the individual clients before commencing the case on their behalves, and apparently nobody prepared them for their depositions.  (*See* Doc. 55 at 18-19; Doc. 57.)

*Family Servs.*, 861 F. Supp. 2d 145, 153-54 (S.D.N.Y. 2012) (reducing hourly rate from $550 to defendants' proposed rate of $450 for lead attorney with forty-two years of experience in civil rights and family law); *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011) (reducing proposed hourly rate from $415 to $350 because hourly rates exceeding $400 to attorneys in civil rights cases "only warranted in unusually difficult and complex cases") (internal quotation marks omitted), *aff'd*, 487 F. App'x 619 (2d Cir. 2012) (summary order).

In addition, the Court finds that Mr. Druker should receive attorneys' fees for this case at the reasonable hourly rate of $275.  *See Custodio v. Am. Chain Link & Constr., Inc.*, No. 06-CV-7148, 2014 WL 116147, at *7 (S.D.N.Y. Jan. 13, 2014) (noting that fees in Southern District of New York for civil rights and employment law litigators with approximately ten years' experience ranges between $250 and $350 per hour).  The factors considered included, among others, the fact that at the time Mr. Druker worked on the instant case, he was an associate with seven years of experience as a practicing attorney, two of which were spent working for a firm specializing in criminal defense work.  (*See* Druker Aff. ¶¶ 2, 3, 9.)

## 2.  Hours "Reasonably Expended"

Plaintiff bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended . . . .  The applicant should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 437 (citation omitted).  "The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Flores v. J & B Club House Tavern, Inc.*, No. 10-CV-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal quotation marks omitted).

9

Hours not "reasonably expended" are excluded from the fee calculation.  *See Hensley*, 461 U.S. at 434.

a.   Contemporaneous Time Records

First Defendants argue that Plaintiffs' counsel failed to submit contemporaneous time records in conjunction with the application for attorneys' fees.  (Ds' Mem. 19.)  The Second Circuit has made clear that any attorney applying for court-ordered compensation "must document the application with contemporaneous time records.  These records should specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Attorneys may deviate from the "strict rule" articulated in *Carey* "only in the rarest of cases."  *Scott v. City of N.Y.*, 626 F.3d 130, 133 (2d Cir. 2010) (per curiam).  Here Ms. Frome supported her application for attorneys' fees with only a re-created summary of her billable time, which Ms. Frome stated was "taken from contemporary records," (Frome Aff. ¶ 3; *see id.* Ex. B), and Mr. Druker "failed to submit any billing records whatsoever, relying only upon assertions made in his affidavit," (Ds' Mem. 19; *see* Druker Aff. ¶¶ 7-8).  On reply Ms. Frome submitted "copies of the contemporaneous time records which were used to create the list of services performed," (Frome Reply Aff. ¶ 3), along with a revised summary of time expended, (*see id.* ¶¶ 4-5; *id.* Ex. B).[5]

---

[5] Ms. Frome's reply affidavit indicated that the original summary of billable time that was provided to the Court, (*see* Frome Aff. Ex. B), contained errors, at times underestimating and at others overestimating her billable time, (*see* Frome Reply Aff. ¶ 4).  Plaintiffs' counsel's initial inaccurate submission to the Court both shows the wisdom of the requirement that contemporaneous records be submitted and undermines Ms. Frome's belief that her forty-plus years of experience justify her request for attorneys' fees.  The need to submit contemporaneous records has been black-letter law in this Circuit since *Carey* was decided in 1983.  A lawyer who is unaware of its mandate not only imperils her opportunity to be awarded fees at all, but exerts downward pressure on the rate.  A lawyer who is aware of but disregards the requirement to submit contemporaneous records also imperils her opportunity to be awarded fees, but further runs the risk of raising the suspicion that she is trying to put one over on the Court and her adversary.  Here I assume the errors (which cut both ways but resulted in an overstatement of almost eighteen hours) were careless rather than intentional.

Plaintiffs' counsel in reply further asserted that Mr. Druker's appearances were "so well documented that contemporaneous records are unnecessary."  (*Id.* ¶ 6.)

The reconstructed summary of billable work that Ms. Frome initially submitted "contravene[s] *Carey*'s mandate," *Perez v. Lasership, Inc.*, No. 15-MC-31, 2015 WL 8750965, at *6 (D. Conn. Dec. 14, 2015); *see Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996) (hindsight review inadequate substitute for contemporaneous time records), and Plaintiffs' counsel's initial failure to submit contemporaneous records is inexcusable and wasted Defendants' time.  But Ms. Frome eventually provided contemporaneous records on reply – although they do not clearly or consistently indicate the nature of work done (a deficiency I will address below) – so I will not deny the application based on the initial failure to comply with *Carey*.

Turning to Mr. Druker, plaintiffs' counsel failed to submit contemporaneous time records with their application for attorneys' fees and still chose not to do so after Defendants in opposition noted this omission.  The Court is aware of no authority, and Plaintiffs have cited none, suggesting that where an attorney's appearances are "well documented," contemporaneous records are unnecessary.  (Frome Reply Aff. ¶ 6.)  Indeed, *Carey* makes no such exception. Defendants suggest that at best, Mr. Druker should be credited for 5.2 hours he spent participating in depositions, which were time-stamped, (Ds' Mem. 19-20), and the Court accordingly reduces Mr. Druker's total hours from 9.5, (*see* Druker Aff. ¶¶ 7-8), to 5.2.

b.  Billing Entry Descriptions

Defendants also argue that Plaintiffs' counsel's timesheet entries are excessively vague. (*See* Ds' Mem. 21-23.)  Neither counsel's summary of billable time nor her contemporaneous records "specify . . . the nature of the work done."  *Kirsch*, 148 F.3d at 173.  Indeed, the

summary at times suspiciously provides more information than the records, suggesting detail was added after the fact for purposes of this motion.  Many of the individual entries in Ms. Frome's records – "Harrison Research," "Research on SMJ," "Research," "Discovery," (*see* Frome Reply Aff. Ex. A) – are of the sort that other courts have deemed excessively vague.  *See Kirsch*, 148 F.3d at 172-73 (affirming twenty percent reduction in billed time for vagueness and other deficiencies where several time entries read "letter to court," "staff conference," and "work on motion"); *Riley v. City of N.Y.*, No. 10-CV-2513, 2015 WL 9592518, at *4 (E.D.N.Y. Dec. 31, 2015) (reducing award by thirty percent for vagueness where time entries consisted of "Discovery," "Research," "Brief Preparation," "Reply" and similar terms, preventing court from assessing what tasks were completed and whether that work constituted reasonable expenditure of attorneys' time); *Custodio*, 2014 WL 116147, at *15 (plaintiff's time entries, such as "[r]esearch law" or "[r]eview records," overly "cryptic" and deficient on vagueness grounds) (first alteration in original); *Harley v. Nesby*, No. 08-CV-5791, 2012 WL 1537881, at *12 n.14 (S.D.N.Y. May 2, 2012) (reducing hours by fifteen percent because court found time entries such as "Research re: privilege/compel production issues," "Research re: discovery compliance," and "Research regarding possible discovery sanctions" overly generalized) (alterations omitted).  The vague nature of Ms. Frome's time entries is only slightly mitigated by "the fact that the Court is able to determine that all of the work was done in connection with the matter for which reimbursement is warranted," *Perez*, 2015 WL 8750965, at *7, because a vague entry prevents the Court from "assess[ing] the reasonableness of the amount charged in relation to the work performed," *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03-CV-1548, 2008 WL 4613752, at *4 (S.D.N.Y. Oct. 17, 2008) (internal quotation marks omitted).  An "across-the-board reduction [is] warranted" for "mere generalities" and "vague descriptions [that] are precisely the sort that

courts have deemed impermissible in the context of fee awards." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304, 2016 WL 3030253, at *6 (S.D.N.Y. May 25, 2016) (collecting cases).  Because almost every entry in Ms. Frome's contemporaneous records is insufficient, I reduce the number of Ms. Frome's hours billed by twenty-five (25) percent on account of vagueness.

c.  Hours Expended

Defendants further argue that Plaintiffs' counsel's time entries are excessive given the tasks performed.  (Ds' Mem. 20, 22.)  They assert that Plaintiffs included a total of 6.5 hours for clerical time – 3.25 hours for "Assemble motion" on December 15, 2014, 1.5 hours for "E-file motion" on March 27, 2015 and 0.75 hours for "File signed affidavits" on April 2, 2015 – which, in Defendants' view, must be excluded.[6]  (*See id.* at 20.)  I agree that Ms. Frome billed for non-legal or ministerial tasks that need not be performed by – or billed at the rate of – a lawyer with Ms. Frome's experience.  *See Harty*, 2016 WL 616397, at *5 (assembling motion, briefs and exhibits for filing, filing motion for summary judgment and supporting documents, and preparing and mailing motion for summary judgment reflected clerical and non-legal tasks); *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 36 (N.D.N.Y. 2015) (reducing hourly rate for non-legal clerical tasks); *E.S.*, 796 F. Supp. 2d at 431-32 (court may reduce fee award when attorneys engage in less skilled work, such as filing and other administrative tasks like preparing documents for electronic filing or faxing and mailing documents).  Accordingly, I will apply a reasonable paralegal rate of $100 per hour for those tasks.  *See Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862, 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016) ("For paralegals, courts in this Circuit have

---

[6] Defendants calculated this time as 6.5 hours, (*see* Ds' Mem. 20), but the time entries they identify add up to only 5.5 hours.  I include, however, Ms. Frome's March 21, 2016 entry of one hour ("Finalize and assemble affidavits") in this category, and therefore the total amount of clerical time is 6.5 hours.

13

generally found $75 to be reasonable.") (internal quotation marks omitted); *Balu v. City of N.Y.*, No. 12-CV-1071, 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) (awarding hourly rate of $80 to paralegals, "comfortably within the range of rates awarded to paralegals in civil rights actions"); *Harty*, 2016 WL 616397, at *5 (awarding reasonable hourly rate of $100 for ministerial tasks); *Andrews v. City of N.Y.*, 118 F. Supp. 3d 630, 643 (S.D.N.Y. 2015) (awarding paralegal hourly rate of $100, and collecting cases).  I will also reduce the paralegal hours by two because it should not take 1.5 hours to e-file motion papers or .75 hours to e-file affidavits.

Defendants also argue that the hours billed by Ms. Frome for research throughout the course of the litigation are excessive.  (Ds' Mem. 22.)[7]  In particular, Defendants suggest that the time billed for research in conjunction with the motion for summary judgment, (Doc. 30) – at minimum, 9.75 hours, and at maximum, 16.25[8] – is excessive, as are the cumulative 28.75 hours billed for researching and drafting the motion and accompanying memorandum, (Doc. 36) (not including the 4 hours billed for drafting Plaintiffs' Rule 56.1 Statement), (*see* Ds' Mem. 22). Defendants also question the 12.75 hours billed for reviewing Defendants' opposition to Plaintiffs' motion for summary judgment, (Doc. 29), conducting further research and drafting Plaintiffs' reply, (Doc. 39), (*see* Ds' Mem. 22).  Finally, Defendants also cite the 8.25 hours, at minimum, billed for research in conjunction with Plaintiffs' instant application for attorneys'

---

[7] Ms. Frome in her affidavit stated that because some of the issues relevant to this case also arose during an action involving NYYC in the Eastern District of New York, "counsel is not charging for the research on those issues, which was used in this case."  (Frome Aff. ¶ 14.)

[8] The Court cannot determine the specific amount of time spent on research because Plaintiffs' counsel utilized "block-billing" for certain entries.  Block-billing is disfavored because it can prevent an accurate assessment of the reasonableness of time spent on each discrete tasks.  *See Congregation Rabbinical Coll.*, 2016 WL 3030253, at *6.

fees,[9] which "produced a 5 page brief with less than half a dozen citations,"[10] none of which are

"the seminal cases on fee awards." (*Id.*) Plaintiffs in reply further requested an additional 18.75

hours for researching and drafting their reply papers on the fee application. (*See* Frome Reply

Aff. Ex. B.)

      After reviewing the relevant documents above, including the memoranda accompanying

the Parties' motions for summary judgment, and taking into account the case-specific factors

discussed above, I find that the hours billed for research and drafting in conjunction with

Plaintiffs' motion for summary judgment, as well as Plaintiffs' reply and opposition to

Defendants' cross-motion, are reasonable, and will therefore not reduce those hours. Turning to

the compensable time billed for researching and drafting Plaintiffs' application for attorneys'

fees, however, I conclude that, based on the lack of breadth and complexity associated with

Plaintiffs' motion papers, Plaintiffs' application should not have required 23.0 hours of billable

work, nor should their reply have required 18.75 hours of billable work, by an attorney as

experienced as Ms. Frome.[11] Accordingly – and in light of the other case-specific factors

discussed above, all of which I have considered[12] – I will, in my discretion, deduct 10 hours and

reduce the compensable time spent researching and drafting Plaintiffs' application for attorneys'

fees and damages to 13.0 hours, and deduct 10 hours and reduce the compensable time spent

researching and drafting Plaintiffs' reply to 8.75 hours. *See Husain v. Springer*, 579 F. App'x 3,

---

[9] Plaintiffs' counsel billed twenty-three hours in total for researching and drafting their application for attorneys' fees and damages.

[10] Defendants are being too generous. Plaintiffs' opening brief, accounting for space left blank, has three pages of substance. The same is true of Plaintiffs' reply brief.

[11] Some of the reply work was necessitated by the inexcusable failure to include contemporaneous records with the motion in the first place.

[12] One of those factors is counsel's relative lack of success on this motion, at least as to Plaintiffs' damages (discussed below).

7 (2d Cir. 2014) (summary order) (noting district court can impose fee reductions for excessive billing); *M. Lady,* 2009 WL 1150279, at *8 ("If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours . . . .") (internal quotation marks omitted).

d.  Travel Fees and Costs

Defendants argue that Plaintiffs' counsel is not entitled to reimbursement for 12.25 billable hours of travel time, which they assert "is not compensable."  (Ds' Mem. 20.)  But an award of attorneys' fees "include[s] reasonable out-of-pocket expenses that are charged to clients ordinarily, such as . . . [local] travel," *U.S. ex rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 08-CV-7826, 2012 WL 1228199, at *4 (S.D.N.Y. Apr. 9, 2012) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)), and accordingly Plaintiffs' counsel's travel time is not automatically excluded.  Ms. Frome only billed for travel time where she attended a court conference, which affects only three entries, *see Sulkowska v. City of N.Y.*, 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001) (declining to reduce fees where plaintiffs only billed for travel time when attending conferences, hearings, or depositions, which affected only ten entries, and noting court's discretion to compensate counsel for travel time at full hourly rates), but she block-billed her time for each of these entries, and accordingly I cannot discern the portion of time that was spent in travel, *see Merch. Cash & Capital LLC v. Edgewood Grp., LLC*, No. 14-CV-3497, 2015 WL 4430643, at *13 (S.D.N.Y. July 2, 2015) (percentage reduction ordinarily warranted where Court cannot distinguish travel time included in time entry), *report and recommendation adopted*, 2015 WL 4451057 (S.D.N.Y. July 20, 2015).[13]  But because this particular deficiency is

---

[13] Plaintiffs' October 23, 2013 time entry indicates six hours billed for a court appearance and amending Plaintiffs' complaint, but it is not clear how much time was spent on either activity.  (*See* Frome Reply Aff. Ex. B.)

"fairly minor," *id.* at *14, the total time for travel and the conference on each occasion seems reasonable, and, as described above, I have already imposed significant downward reductions of the attorneys' fees requested, I will not impose a further fee reduction on this basis.[14]

e.   Billing Time Increments

Finally, Defendants argue that Plaintiffs' counsel improperly recorded its time in quarter-hour segments.  (*See* Ds' Mem. 23.)  Some courts have found that this practice "tends substantially to overstate the amount of time spent . . . [and] adds an upward bias in virtually all cases," *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-CV-6757, 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009), though "lower courts within the Second Circuit are in conflict as to whether there should be a prohibition on billing in increments larger than six minutes," *G.B. ex rel. N.B.*, 894 F. Supp. 2d at 441 (internal quotation marks omitted), and therefore the matter is left to the Court's discretion.  "[C]ourts which have elected to apply an across-the-board reduction for billing in fifteen-minute increments have generally done so when the billing method contributed to counsel recording an inflated number of hours," *id.* at 442, such as when a short task such as a phone call or email is billed as taking fifteen minutes, *see Oxford Venture Fund Ltd. P'ship v. CIT Grp./Equip. Fin., Inc.*, No. 89-CV-1836, 1990 WL 176102, at *2 (S.D.N.Y. Nov. 5, 1990) (quarter-hour increments led to "excessive billing" where attorneys billed one quarter-hour "for making one . . . telephone call – an activity that surely took only a fraction of that time").  Ms. Frome did not bill for such tasks and her records do not suggest that she over-billed for her services because she billed in quarter-hour increments.  Indeed, Defendants make no such argument and urge a ten percent reduction merely due to the fact that

---

[14] Mr. Druker similarly included travel time when stating his hours spent on this matter, and, like Ms. Frome, did not distinguish between travel and other time.  (*See* Druker Aff. ¶¶ 7-8.)  But, in any event, my reduction of Mr. Druker's hours for failure to provide time records necessarily removed all travel time because I awarded him attorneys' fees only for those hours spent at Plaintiffs' depositions.

quarter-hour billing is "disfavored."  (Ds' Mem. 23.)  Accordingly, a reduction in fees solely because Plaintiffs' counsel billed in quarter-hour increments is not warranted in this case.

### B.  Damages Analysis

Plaintiff NYYC requests $38,400 in damages:  (a) $23,400, representing three years of net lost profits; (b) $5,000, as a partial offset to future reduced sales until NYYC re-establishes its presence in the community; and (c) $10,000, "in recognition of the civil rights of the organization and its members."  (See Jackson Aff. ¶¶ 5, 9, 10.)[15]  Plaintiffs Miguel B. and Kelvonte C. each request $12,228 in damages:  (a) $1,728, representing three years of lost income; (b) $500, as a partial offset to future reduced sales until they re-establish relationships in the community; and (c) $10,000, as compensation for "los[ing] the points[] and the ability to attend functions with the New York Youth Club based upon those points . . . and the violation of [their] civil rights."[16]  (See Baez Aff. ¶¶ 2, 3, 4; Colclough Aff. ¶¶ 2, 3, 4.)[17]

Defendants first argue that Plaintiffs' request for damages addressing the deprivation of their civil rights "fail[s] as a matter of law since damages do not lie merely for the deprivation of their First Amendment rights."  (Ds' Mem. 9.)  Defendants correctly note that compensatory damages for violations of First Amendment rights are impermissible absent proof of actual injury, see Stachura, 477 U.S. at 310, and accordingly an award of damages solely in recognition of Defendants' infringement of Plaintiffs' rights must be denied.  Plaintiffs Miguel B. and

---

[15] "Jackson Aff." refers to Affidavit of Nathan Jackson in Support of Plaintiffs' Application for Attorneys' Fees and Damages.  (Doc. 81.)  Plaintiffs request $48,400 in damages for NYYC, but the supporting affidavit accounts for only $38,400 in damages.

[16] Although "[c]ompensatory damages have been held to include not only actual, out-of-pocket losses . . . but also compensation for pain and suffering and mental or emotional distress," Colon, 2012 WL 691541, at *10, Plaintiffs have not claimed any such damages.

[17] "Baez Aff." refers to Affidavit of Miguel Baez in Support of Plaintiffs' Application for Attorneys' Fees and Damages.  (Doc. 82.)  "Colclough Aff." refers to Affidavit of Kelvonte Colclough in Support of Plaintiffs' Application for Attorneys' Fees and Damages.  (Doc. 83.)

Kelvonte C. offer an additional basis as part of their request for $10,000 in damages – namely, their loss of "points" that would have allowed them, "[a]fter accumulating enough credits . . . to participate in recreational activities such as paintball, basketball games and trips to museums or the movies." *N.Y. Youth Club v. Town of Harrison*, No. 12-CV-7534, 2015 WL 8492758, at *2 (S.D.N.Y. Dec. 10, 2015).  But Plaintiffs have not articulated any specifics or provided any documentation, testimony or other reasonable means of estimating damages on these grounds at $10,000 each (or, for that matter, any particular amount).  Indeed, both Miguel B. and Kelvonte C. testified at their 2014 depositions that they rarely go on the NYYC trips.  (*See* Baez Dep. 61; Colclough Dep. 44-45.)[18]  Because they bear the burden of establishing the amount of their injury to a reasonable certainty, *Wallace*, 809 F. Supp. 2d at 88, this request for damages is reduced to $100, which approximates the cost of two trips to a ball game or museum.

Separately, Defendants assert that Plaintiffs' claim for economic damages due to lost profits must fail because:  (1) the proffered evidence to support their claim is inadmissible; (2) the claim is unsupported by a calculation of income and expenses related to candy sales during the relevant period; and (3) the claim does not account for sales made in other municipalities during the time Plaintiffs chose not to sell in Harrison.  (*See* Ds' Mem. 10.)  Plaintiffs submitted only affidavits in support of their claim – opting not to provide additional supporting documentation of any kind[19] – and in their calculations did not account for revenue earned in

---

[18] "Baez Dep." refers to Examination Before Trial of Miguel Baez.  (Doc. 87 Ex. B.)  "Colclough Dep." refers to Examination Before Trial of Kelvonte Colclough.  (Doc. 87 Ex. C.)

[19] Plaintiffs in reply state that "they provided the Court with all of the information they possessed regarding damages.  Since they did not keep records by location in which the solicitation was made, they could only estimate the loss based upon the average amount which they were able to solicit in that location."  (Frome Reply Aff. ¶ 23.)  In Kelvonte C.'s deposition, however, he referred to a book maintained by NYYC that tracks sales and is organized by location and member, (*see* Colclough Dep. 37-38), and NYYC Executive Director Nathan Jackson in his deposition also indicated that NYYC maintains a "full accounting" of records such as the products it receives on consignment and what NYYC pays for them, and that "[a]t the end of each week, [he] know[s] what each team member had, what they sold, [and] what they earned," (*see* Examination Before Trial of Nathan Jackson ("Jackson Dep."), Doc. 87 Ex. A, 39-40, 43).  Even if NYYC's weekly records do not show where products are sold, (*see id.*

other towns during the relevant period that may have mitigated the losses suffered due to the lack

of available business in Harrison, thereby preventing me from estimating their lost profits with

"reasonable certainty." *Compare Colon*, 2012 WL 691544, at \*13-14 (sufficient factual basis to

award damages for § 1983 and other violations where plaintiffs submitted accountant's analysis

calculating losses owed to their business, though court declined to specifically award lost profits

because it deemed accountant's analysis "insufficiently detailed" in this respect), *with Hobbs v.*

*Cty. of Westchester*, No. 00-CV-8170, 2003 WL 21919882, at \*3-4 (S.D.N.Y. Aug. 13, 2003),

*aff'd*, 397 F.3d 133 (2d Cir. 2005) (awarding plaintiff damages after he successfully challenged

county regulations that precluded him from performing in certain public areas, despite "inexact

nature [of plaintiff's testimony] and the lack of supporting records," where plaintiff testified as to

his estimated earnings while busking in other locations).  As Defendants argue, "[i]f NYYC had

solicited in other areas making the same or more revenue they have not suffered any damages."

(Ds' Mem. 11.)

Plaintiffs in reply assert that "[t]he loss of Harrison could not be made up in other, less

productive, areas," (Frome Reply Aff. ¶ 24), suggesting that they did in fact suffer injury.  But

this argument appears only in counsel's affidavit and therefore cannot be based on firsthand

knowledge.  *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir.

1999) (district court lacked sufficient evidence to award damages because court had only

allegations in complaint and affidavit of plaintiff's counsel, "who did not purport to have

personal knowledge of the facts"); *E. Reg'l Med. Ctr., Inc. v. Santos*, No. 13-CV-4680, 2014 WL

1348012, at \*2 (E.D.N.Y. Apr. 3, 2014) ("[T]he only evidence which Plaintiffs have offered in

---

43), it would be a simple matter to compare overall sales for the months or years when Plaintiffs sold in the town of
Harrison to the overall sales in the months or years when Plaintiffs did not.  The absence of records is thus properly
considered in determining whether Plaintiffs have met their burden of establishing their damages.

support of their damages request is an affidavit from their attorney.  This affidavit is insufficient

to establish Plaintiffs' damages and their entitlement to recovery . . . [because it] does not

indicate that the attorney has any personal knowledge of the amounts owed by Defendant."); *E-*

*Centurion, Inc. v. Long Beach Co.*, No. 06-CV-5913, 2012 WL 3597583, at *2 (E.D.N.Y. July

12, 2012) ("[A]n attorney declaration setting forth the basis for the amounts owed and attaching

certain documents . . . was not provided by an individual with first-hand knowledge of the

Company's business and was therefore insufficient to establish that a sum certain was owed."),

*report and recommendation adopted*, 2012 WL 3597025 (E.D.N.Y. Aug. 20, 2012).

Further, even if the entire loss from Harrison could not be remedied in other areas – a

dubious proposition given the myriad other affluent towns in the area – a significant percentage

of it could have been.  Plaintiffs' affidavits studiously avoid this issue,[20] and no reply affidavits

were submitted even after Defendants raised it.  Plaintiffs have not provided any evidence or

supporting documentation that NYYC did not engage in sales in other towns that may have

mitigated or eliminated the damages they now request from Defendants.  NYYC has shown it

lost sales in Harrison but has not shown it lost sales overall, which it easily could have done.

(*See* Jackson Dep. 39-40, 43.)  Even assuming that not all of the Harrison sales were made up

elsewhere, I would be guessing as to what percentage were not.  I cannot award compensatory

damages to NYYC based on guesswork, and thus decline to award any.  *See Tolbert v. Queens*

*Coll.*, 242 F.3d 58, 75, 78 (2d Cir. 2001) (affirming jury's denial of compensatory damages as

speculative but awarding nominal damages); *Wolff & Munier, Inc. v. Whiting-Turner*

*Contracting Co.*, 946 F.2d 1003, 1010 (2d Cir. 1991) ("Although a party is not to be denied

---

[20] Jackson in his affidavit says only that "Harrison has always been a very good town for our fundraising."  (Jackson Aff. ¶ 7.)

damages when they are necessarily uncertain, New York law does not countenance damage awards based on speculation or conjecture.") (alteration, citation and internal quotation marks omitted); *Wallace*, 809 F. Supp. 2d at 88 (denying certain compensatory damages sought by plaintiff as "wholly speculative and inappropriate" where plaintiff failed to produce sufficient evidence to establish, with reasonable certainty, "how much [he] could have or would have received," or "that he in fact suffered any such loss").[21]  Where, however, a plaintiff cannot show proof of actual injury, "[d]eprivations of civil rights may lead to damages for a nominal sum of money."  *Safir*, 2002 WL 461595, at *10.  Accordingly, NYYC is hereby awarded $1 in nominal damages.

Plaintiffs Miguel B. and Kelvonte C. seek three years of lost income, totaling $1,728 apiece.  They aver that they made $2 per box of candy sold, and would have sold 864 boxes in Harrison during the period the unconstitutional ordinance was in effect.  (*See* Colclough Aff. ¶ 2; Baez Aff. ¶ 2.)  As Defendants point out, (Ds' Mem. 10), the $2 a box commission is a fact that never before surfaced in this litigation.  The Complaint, Amended Complaint and Second Amended Complaint all represented that the youths soliciting on NYYC's behalf earned points that could be redeemed for outings or merchandise.  (*See* Complaint, (Doc. 1), ¶ 19; Amended Complaint, (Doc. 13), ¶ 19; SAC ¶ 18.)  When NYYC Executive Director Jackson in his deposition was asked what became of the money collected from sales, he did not mention any payment to the youth members.  (*See* Jackson Dep. 34 ("Q.  Does [Miguel B.] get paid by the New York Youth Club?  A.  No."); *see id.* at 48-49.)  When he was asked whether members earned credits, he said they earned incentives such as laptops or shopping trips.  (*Id.* at 50.)

---

[21] This is not a situation where the harm is "impossible to measure."  *Stachura*, 477 U.S. at 311.  It could be measured but Plaintiffs have chosen not to provide sufficient information from which to do so.  There is thus no way to approximate the losses with anything approaching "reasonable certainty."  *Wallace*, 809 F. Supp. 2d at 81.

Miguel B. testified that the money raised was used for trips and activities. (Baez Dep. 58.)  He made no mention of being paid by the box.  Likewise, Kelvonte C. testified that the purpose of the fundraising was for trips and activities, (Colclough Dep. 16), and that all proceeds of sales are turned in to NYYC, (*id.* at 38), mentioning nothing about a $2 a box payment.  On the other hand, as Plaintiffs point out, (Frome Reply Aff. ¶ 26), they were not asked point-blank if the sellers made money – a strange omission on Defendants' counsel's part.[22]

On the whole, the record as it stands suggests to the Court that the $2 a box commission was in place at the relevant time but that Plaintiffs went out of their way not to mention that fact.[23]  I will in any event assume for purposes of the instant motion that the individual Plaintiffs did indeed earn $2 a box.[24]  Like NYYC, they have provided no information as to the extent to which they made up elsewhere for sales lost in Harrison, even after Defendants pointed out that omission.  I am thus left to guess as to their actual losses.  Plaintiffs therefore have not carried their burden of showing, with reasonable certainty, that they suffered actual injuries of $1,728, and accordingly this request for compensatory damages is denied.

Plaintiffs' claims for damages as an offset to future loss, based on their assertion that they will need to re-establish their connection to the community and therefore will suffer additional reduced sales in the meantime, are denied.  Plaintiffs have not made clear any reasonable or reliable means of assessing whether they will suffer actual injury (for example, why re-starting

---

[22] One would think that that question would have occurred to counsel taking the depositions (a different lawyer than currently represents Defendants), given that Miguel B. and Kelvonte C. both said they had little interest in the trips. If the points toward the trips no longer had meaning to them, it would obviously raise the question why they continued to sell for NYYC.

[23] I considered having an inquest at which Jackson, Miguel B. and Kelvonte C. could have testified, but given the small amounts involved and my disposition below, such a proceeding would involve unnecessary expense for both sides.  I therefore resolve the issue on the current record.

[24] On that assumption, the amount that NYYC sought was excessive.  Jackson in his affidavit said that NYYC paid $3.50 a box and sold each for $10, and therefore sought $6.50 a box in lost profits.  (*See id.* ¶¶ 3-4.)  But if $2 went to the salesperson, NYYC's profit would be only $4.50 a box.

sales in the Town would require any start-up time or re-establishment of relationships) or, if so, what the amount of these damages would be.

### C.  **Plaintiffs' Reasonable Fees and Costs**

<u>Attorneys' fees for Ms. Frome</u>
*Hours:*

| | |
|---|---|
| Requested | 165.25 hours |
| Subtractions | 10 hours (application for attorneys' fees) |
| | 10 hours (reply memorandum) |
| | 6.5 hours (other ministerial tasks – assembling and filing documents, etc.) |
| Across-the-board 25% reduction for vagueness | 138.75 hours x .75 = 104.06 |
| Awarded | 104.06 |

*Hourly Rate:*

| | |
|---|---|
| Requested | $450/hour |
| Awarded | $375/hour |

*Total Attorneys' fees:*

| | |
|---|---|
| Requested | $74,362.50 |
| **Awarded** | **$39,022.50** |

<u>Attorneys' fees for Mr. Druker</u>
*Hours:*

| | |
|---|---|
| Requested | 9.5 hours |
| Subtractions | 4.3 hours (failure to provide time entries) |
| Awarded | 5.2 hours |

*Hourly Rate:*

| | |
|---|---|
| Requested | $375/hour |
| Awarded | $275/hour |

*Total Attorneys' fees:*
Requested                         $3,562.50

**Awarded**                       **$1,430.00**

Paralegal Fees
*Hours:*
Requested                         6.5 hours

Subtractions                      2 hours (excessive time billed)

Awarded                           4.5 hours


Hourly Rate:                      $100/hour

**Awarded**                       **$450.00**

Costs
Requested                         $1,222.95[25]

**Awarded**                       **$1,222.95**

**Total Fees and Costs**
Requested                         $79,147.95

**Awarded**                       **$42,125.45**

## III.   **Conclusion**

Thus, for reasons stated above, Kase & Druker, Esqs. is entitled to fees and costs in the amount of $42,125.45 for its work on this case.  Miguel B. and Kelvonte C. are entitled to compensatory damages in the amount of $100 each, and NYYC is entitled to nominal damages in the amount of $1.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 78), and close the case.

---

[25] This figure is comprised of administrative costs requested by Ms. Frome ($350.00 for filing fees, $475.00 for service of process, and $397.95 for deposition transcripts).  (Frome Aff. ¶ 27; *see id.* Ex. F.)  Defendants do not contest Plaintiffs' request for these disbursements.

**SO ORDERED.**

Dated: July 6, 2016
      White Plains, New York

_____

CATHY SEIBEL, U.S.D.J.